UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY WRIGHT,

    Plaintiff,

v.                                            Case No. 1:19-cv-779

                                              Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB).

Plaintiff fell off a motorcycle and suffered injuries on March 29, 2016. Plaintiff's Brief (ECF No. 13, PageID.862). Plaintiff filed an application for DIB on July 5, 2016, alleging a disability onset date of July 1, 2016. PageID.36. Plaintiff identified his disabling conditions as a motorcycle accident, neck brace due to injuries, lower back impairment due to accident, right shoulder impairment with limited mobility in right arm, diabetic, sciatic nerve pain, screws and plates holding hip bone together, walks with a cane, trouble sleeping, and trouble getting up from a sitting position. PageID.232. Prior to applying for DIB, plaintiff completed the 9th grade and had past employment as an assembler and salvage cutter. PageID.48. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 6, 2018. PageID.36-50. This decision, which was later approved by the Appeals

1

Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 1, 2016 through his date last insured of December 31, 2016. PageID.38. At the second step,

the ALJ found that through the date last insured, plaintiff had the following severe impairments: status post traumatic fractures of the nasal and septal bones, cervical spine, lumbar spine, thoracic spine, and multiple ribs; osteoarthritis of the bilateral hips; right shoulder adhesive capsulitis; acromioclavicular (AC) joint separation; reduced bone density; mood disorder; post-traumatic stress disorder (PTSD); and post-concussion syndrome. PageID.38. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.39.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant should never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; should avoid more than occasional exposure to extremes of cold or to vibration; have no work at unprotected heights, no work with dangerous moving machinery, and no commercial driving. In addition, the claimant is limited to understanding, remembering, and performing simple tasks, making simple decisions, and can adapt to only occasional changes in workplace routines.

PageID.42. The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work. PageID.48.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.49-50. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled work in the national economy such as assembler (55,000 jobs), packer (27,000 jobs), and machine operator (30,000 jobs). PageID.50. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time from July 1, 2016 (the alleged onset date) through December 31, 2016 (the last date insured). PageID.50.

### III. DISCUSSION

Plaintiff's appeal is limited to his condition as it existed from July 1, 2016 through December 31, 2016. Plaintiff set forth six issues on appeal.[1]

#### A. ALJ Grit gave no good reasons for rejecting PA Parniske's restrictions

Plaintiff contends that ALJ Grit failed to give good reasons for the weight assigned to PA Mike Parniske's opinions under the treating physician rule. *See* Plaintiff's Brief (ECF No. 13, PageID.864).[2] Under this rule, a treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson*, 378 F.3d at 545, this articulation requirement does not apply when an ALJ evaluates the report of a medical source such as PA Parniske, who is not a treating, acceptable

---

[1] The Court is reviewing the issues set forth in plaintiff's redacted initial brief (ECF No. 13).

[2] Because plaintiff filed his claim before March 27, 2017, the "treating physician rule" applies to the ALJ's decision. *See* 20 C.F.R. § 404.1527.

5

medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007). "The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record." *Noto v. Commissioner of Social Security*, 632 Fed. Appx. 243, 248-49 (6th Cir. 2015). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted).

Here, the ALJ evaluated PA Parniske's opinions as follows:

> The orthopedic physician's assistant [PA Parniske] offered a February 2017 opinion, taking the claimant off work until March 14, 2017 and thereafter providing for limited bending, twisting, a sit stand option, sedentary work only, and no lifting more than ten pounds. (Exhibit 18F/13) That opinion is given partial weight. The statement for a period "off work" is given no weight, as it is a legal conclusion and not a medical opinion. However, the opinion limiting the claimant to sedentary work and no lifting greater than ten pounds is given great weight, as it is consistent with the medical evidence and the objective findings. The statements that the claimant can perform "limited" bending and twisting and needs a sit stand option are given little weight, as they are too vague to be helpful in determining the residual functional capacity.

PageID.48. *See also*, PA Parniske's opinion (PageID.622).

Plaintiff agrees that some of the restrictions such as "limited" bending, "were too vague to incorporate into an RFC." Plaintiff's Brief at PageID.865. However, plaintiff contends that "[t]here is nothing ambiguous about a sit-stand option: the work must allow the worker to sit or stand, at his option." *Id*. The Court agrees. While the ALJ here concluded that an unelaborated "sit stand option" is vague, other ALJs disagree and include an unelaborated "sit stand option" in the RFC determination.[3] Here, the ALJ did not explain why P.A. Parniske's reference to work

---

[3] *See, e.g., White v. Commissioner of Social Security*, 312 Fed. Appx. 779, 786 (6th Cir. 2009) ("The ALJ found that White 'retains the following residual functional capacity: light work with a sit/stand option; occasional pushing and pulling with [right lower extremity]; and occasional bending, kneeling, squatting, crouching, and crawling.' A.R. at 19 (ALJ Decision at 6)."); *Hilliard v. Secretary of Health & Human Services*, No. 94-2212, 1996 WL 78311 at *3, 78

restrictions which include a "Sit/Stand Option" (PageID.622) is vague. Given this record, the ALJ's decision does not "say enough to allow the appellate court to trace the path of [her] reasoning" with respect to the sit-stand option. *See Stacey*, 451 Fed. Appx. at 519.

The addition of a sit/stand option is relevant because this additional restriction would reduce the number of jobs which plaintiff could perform in the national economy. When the ALJ posed a question to the vocational expert (VE) which added the ALJ's definition of a sit-stand option (*i.e.*, "defined as the ability or the option to change from sit to stand or from stand to sit at least every 60 minutes, six-zero"), the VE testified that such a restriction would reduce the available jobs for the hypothetical person from 112,000 to 52,000 (*i.e.*, "[I]t would reduce the assemblers to about 25,000. It would reduce the packers to about 15,000, and machine operators to about 12,000.). PageID.77. Accordingly, the ALJ's decision will be reversed and remanded pursuant to sentence-four of 42 U.S.C. 405(g). On remand, the Commissioner should re-evaluate PA Parniske's opinion with respect to the sit/stand option.

---

F.3d 584 (Table) (6th Cir. 1996) (The ALJ concluded in pertinent part "5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for work involving lifting more than 10 pounds and prolonged standing and walking and also the claimant would need a sit/stand option (20 CFR 404.1545 and 416.945); *White v. Commissioner of Social Security Administration*, 970 F. Supp. 2d 733, 739 (N.D. Ohio 2013) ("The ALJ partially discounted Plaintiff's allegations that his symptoms limited his abilities and concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: frequently climbing ramps and stairs; never crouching; never climbing ladders, ropes, or scaffolds; occasionally stooping, kneeling or crawling; having a sit-stand option; performing slower-paced, repetitive, routine tasks and some complex tasks; having no interaction with the general public; having only occasional contact with co-workers and supervisors; and he could engage in telephone contact."); *Similton v. Commissioner of Social Security*, No. 14-12648, 2015 WL 4756537 at *2 (E.D. Mich. Aug. 12, 2015) (the ALJ found that "[C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she requires a sit-stand option performing tasks in a low stress environment (meaning minimal changes in work place settings). She can occasionally push and/or pull with her upper extremities. The claimant can have no more than occasional contact with the public. She must avoid exposure to hazardous work sites, machinery, poor ventilation, or pulmonary irritants such as dust or fumes."); *Garvin v. Astrue*, No. 3:10:0498, 2011 WL 3205350 at *5 (July 26, 2011), R&R adopted, 2011 WL 3875748 (M.D. Tenn. Sept. 1, 2011) (the ALJ found that "The claimant has the residual functional capacity to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk 2 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday with a sit/stand option, and restricted bending, and squatting.").

### B. ALJ Grit mishandled continuing shoulder problems

Plaintiff points out that he suffered a fractured scapula and distal clavicle in the March 2016 accident and had symptoms after that date. Plaintiff contends that the ALJ erred because she did not include reaching limitations in the RFC. The ALJ addressed this limitation while reviewing the opinion evidence:

> As for the other opinion evidence, the State Agency medical consultant opined that the claimant has the physical residual functional capacity to lift and/or carry 50 lbs. occasionally, 25 lbs. frequently; stand and/or walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; occasionally climb ladders, ropes, or scaffolds; frequently climb ramps and stairs, balance, and stoop; though was limited to occasional bilateral overhead lifting (Exhibit 3A). While this opinion was reasonable, based on the evidence available at the time, additional evidence received into the record at the hearing level convinces the undersigned that the claimant was more limited than originally thought in the exertional and postural limitations. In addition, the ongoing evidence at the hearing level does not support the limitation on overhead reaching due to the improvement following shoulder surgery as discussed above. Thus, the opinion is accorded little weight.

PageID.48.

Plaintiff contends that the ALJ erred because the surgery did not eliminate his symptoms. In this regard, plaintiff seeks a sentence-six remand to consider "new evidence" from October 9, 2018, which consists of a Mary Free Bed Rehabilitation Hospital functional capacity assessment (PageID.30-32). *See* Plaintiff's Brief (ECF No. 13, PageID.875-876). When a plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir. 1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new

8

evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g).

In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id*. "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Plaintiff has not met his burden because the new evidence is not relevant to his claim for DIB. "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984). Since plaintiff's insured status for purposes of DIB expired on December 31, 2016, he cannot be found disabled unless he can establish that a disability existed on or before that date. *Id*. Here, plaintiff's new functional assessment did not provide evidence of his condition as it existed on or before December 31, 2016. Rather, the assessment provided evidence of plaintiff's condition in October 2018, more than 1½ years after the relevant time period. These records are not relevant to a sentence-six remand because they do not reflect plaintiff's condition as it existed on or before his date last insured. *See, e.g., Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir. 1986) (where the ALJ found that the claimant could perform light or sedentary work as of the relevant date of December 5, 1983, new

medical evidence compiled in March 1985 that may show a deterioration in the claimant's condition "does not reveal further information about the claimant's ability to perform light or sedentary work in December 1983"). *See also*, *Mingus v. Commissioner*, No. 98-6270, 1999 WL 644341 at *5 (6th Cir. Aug. 19, 1999) (deterioration of the claimant's eyesight in August 1996 is not relevant to the claimant's condition as it existed on her last insured date of December 31, 1993); *VanVolkenburg v. Secretary of Health and Human Services*, No. 8-1228, 1988 WL 129913 at *3 (6th Cir. Dec. 7, 1988) (deterioration of the claimant's condition in 1987 not material to her condition in 1985). Accordingly, plaintiff's request for a sentence-six remand will be denied.

### C.     ALJ Grit mishandled plaintiff's ambulatory aids

Plaintiff contends that the ALJ improperly discounted his use of an ambulatory aid (a cane) because he did not use it for a continuous period of 12 months. Plaintiff was injured in a motorcycle accident in March 2016 (before his alleged onset date) and in a motor vehicle accident on October 21, 2016 (after his alleged onset date). PageID.559-560. The ALJ addressed ambulatory aids as follows:

> In addition, even with the indication of the use of a walker or wheelchair at this time [September 6, 2018], I find that the evidence does not support the use of either device for a continuous period of 12 months. After the initial accident in March 2016, the claimant was noted to be ambulating without an assistive device by July as noted above (Exhibit 6F/1-2). After the second accident in October 2016, the claimant was noted to be walking without an assistive device by July 2017, as further discussed below (Exhibit 14F/1). Regardless, Social Security Ruling 96-9p states that the use of a medically required hand-held assistive device for only prolonged ambulation will not ordinarily significant erode the sedentary occupational base. As such, this device has not been included in the residual functional capacity through the date last insured of December 31, 2016. Given the ambulation with a cane only two months after the initial injury, and later indications of ambulation with a cane or without an assistive device within 12 months of the spinal surgery, and noting the generally normal strength and sensation on repeated neurological exams, while taking into consideration the ongoing medical issues, I find that the claimant's physical impairments are sufficiently considered in the residual functional capacity limitations assessed herein through the date last insured of December 31, 2016.

10

PageID.45. The ALJ is not required to include a limitation in the RFC when the record indicates that the limitation did not meet the twelve-month duration requirement. *See Ortiz-Rosado v. Commissioner of Social Security*, 12 Fed. Appx. 349, 352 (6th Cir. 2001); 20 C.F.R. § 404.1505. Accordingly, plaintiff's claim of error will be denied.

### D. ALJ Grit ignored effects of treatment

Plaintiff points out that between July 1, 2016 and "June, 2017" he was hospitalized for five days and underwent medical treatment on 31 occasions. Plaintiff's Brief (ECF No. 13, PageID.869-870). Plaintiff estimated that he lost 20.5 days of work during that time period, or 1.7 days per month. *Id*. Plaintiff wants the Court to remand this case to the Commissioner to formulate a new RFC that includes work missed due to medical treatment. *Id*. at PageID.871. Plaintiff's claim is without merit. As an initial matter, plaintiff did not present any evidence to support this alleged error; plaintiff's claim of missed work is based upon an assumption that each doctor visit from July 2016 through June 2017 would preclude one-half day of work. Plaintiff's Brief at PageID.869. Next, the ALJ addressed this issue of "missed work" when she found that plaintiff did not engage in substantial gainful activity "from his alleged onset date of July 1, 2016 through his date last insured of December 31, 2016." PageID.38. Finally, any work missed in 2017 is not relevant to plaintiff's claim because it occurred after the expiration of his insured status for DIB. *See Garner*, 745 F.2d at 390. Accordingly, plaintiff's claim of error will be denied.

### E. ALJ Grit's RFC finding contradicts her "concentration, persistence or pace" (CPP) finding

Plaintiff contends that the decision is internally inconsistent because at step three the ALJ found that plaintiff had moderate restrictions in CPP at step three, but at step four the ALJ's RFC assessment found a limitation in only one of the three areas referenced in CCP.

11

Plaintiff's claim is without merit. Plaintiff's brief refers to a finding made at step three of the sequential evaluation process, when the ALJ was required to determine whether plaintiff met "paragraph B" of listed impairments 12.02, 12.04 and 12.15. PageID.40-41. Contrary to plaintiff's contention,

> [T]he finding at step three is not a residual functional capacity finding. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.A. That finding is formulated at step four, which "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C" of the Listings to be considered at step three. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Thus, an ALJ does not necessarily err by finding moderate limitations at step three but excluding those limitations in a "residual functional capacity" analysis at steps four and five.

*Wood v. Commissioner of Social Security*, No. 19-1560, 2020 WL 618536 at *3 (6th Cir. Jan. 31, 2020). *See Kraus v. Colvin*, No. 13-C-0578, 2014 WL 1689717 at *15 (E.D. Wis. April 29, 2014) (Because three different functions in paragraph "B" are listed in the disjunctive, "a check in the moderate box does not indicate whether the limitation applies to one, two, or all three functions. . . the mental residual functional capacity assessment requires a more detailed assessment than the preliminary assessment used at steps 2 and 3 to determine whether the impairment is severe and meets a listing.").

Here, the ALJ incorporated the relevant portions of the paragraph B criteria into the RFC assessment:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

PageID.41. As discussed, the ALJ's RFC included the non-exertional restrictions that "the claimant is limited to understanding, remembering, and performing simple tasks, making simple

decisions, and can adapt to only occasional changes in workplace routines." PageID.42. For these reasons, the ALJ did not err in omitting the step three "paragraph B" findings in plaintiff's RFC. Accordingly, plaintiff's claim of error will be denied.

### F. ALJ Grit failed to consider regional jobs

Plaintiff contends that the ALJ erred at Step Five because she failed to offer evidence of significant numbers of jobs in either Michigan, or in at least two other regions of the country, and improperly relied on the VE's testimony "only as to jobs in the U.S." *See* Plaintiff's Brief at PageID.874; 42 U.S.C. § 423(d)(2)(A) ("'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."). Plaintiff's contention is without merit. "[Sixth Circuit] cases have consistently found evidence of the jobs available nationally to be sufficient to carry the Commissioner's burden, without requiring testimony that specifies particular regions in which those jobs are available." *Wood*, 2020 WL 618536 at *6. Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

For the reasons set forth in this opinion, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate PA Parniske's opinion with respect to the sit/stand option. A judgment consistent with this opinion will be issued forthwith.


Dated: March 22, 2021                                         /s/ Ray Kent
                                                              RAY KENT
                                                              United States Magistrate Judge